UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAKE A. DUOBLYS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:25-cv-00768 |
| KYLE D. KROESSER, ET AL., | § § § | |
| Defendants. | § § | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants Kyle D. Kroesser, Cloey C. Pierce, Sandra D. Barnes, Sarah E. Lake, Jonathan M. Malis, and Nicholas J. Ganjei[1] move to dismiss this case because (1) the February 2023 incident is barred by limitations; (2) there is no *Bivens* cause of action; and (3) Defendants are protected by qualified immunity.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff is a special agent with the Department of Justice Office of Inspector General ("OIG"), stationed in Houston, Texas. ECF No. 1 at 2:16-17. Plaintiff filed suit on February 18, 2025, alleging "violation of his constitutional rights under *Bivens v. Six Unknown Named Agents*." *Id.* at 1:26-27. He alleges that his personal firearm was seized for four days in 2023 and one day in 2025, before being returned to him on both occasions. *Id.* at 3:14-16; 3:17-28; 4:11-26.

---

[1] Though U.S. Attorney Ganjei is not listed in the complaint as a Defendant, he was served with a summons and is listed as a Defendant on the docket. To the extent U.S. Attorney Ganjei is a party to this suit, he joins in this Motion to Dismiss.

Plaintiff has sued the Assistant Special Agent in Charge of the Houston Office of OIG, the Special Agent in Charge of OIG South Central Region, the Deputy Assistant Inspector General for Investigations at OIG, the Assistant Inspector General for Investigations at OIG, and the General Counsel for OIG. *Id.* at 2:18-29. Defendants now move to dismiss this lawsuit.

## STATEMENT OF THE ISSUES

1. Are Plaintiff's claims involving the February 2023 incident barred by limitations?

2. Should this case be dismissed for failure to identify a viable *Bivens* cause of action?

3. Does qualified immunity apply to this case, such that the case should be dismissed?

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss an action when it lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quotations omitted). Once a Rule 12(b)(1) motion is filed, the party asserting jurisdiction bears the burden of proof. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quotations omitted). In reviewing such a motion, a court may rely on any of the following to decide the matter: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quotations omitted).

Further, a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must

contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Unsupported factual allegations and legal conclusions, however, receive no such deference. *Id.* at 679. A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I.    Plaintiff's claims regarding the February 2023 incident are barred by limitations.

Plaintiff alleges that his personal firearm was first seized on February 9 and returned on February 13, 2023. ECF No. 1 at 3:5-27. "In Texas, *Bivens* actions are limited by a two-year statute of limitations." *Tampico v. Martinez*, 987 F.3d 387, 392 (5th Cir. 2021). The complaint was filed on February 18, 2025. ECF No. 1. Because Plaintiff brought his claims more than two years after the initial incident, any claim related to that incident is barred.[2]

### II.    Plaintiff's claims fail because he cannot clear the high bar set for lawsuits allowed to be brought under *Bivens*.

The federal government cannot be sued unless Congress has waived sovereign immunity by statute. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). A waiver of sovereign immunity cannot be implied; it must be unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. King*, 395 U.S. 1, 4 (1969). Accordingly, to bring the United States or one of its agencies into court, a statute must expressly waive the sovereign immunity of the United States. *Lane v. Pena*, 518 U.S. 187, 192 (1996). A waiver of sovereign immunity is "strictly construed, in terms of its scope, in favor of the sovereign." *Id.*

---

[2] Neither *pro se* status nor unfamiliarity with the legal process provide a basis to toll the statute of limitations. *See Barrow v. New Orleans S.S. Ass'n,* 932 F.2d 473, 478 (5th Cir. 1991).

Though 42 U.S.C. § 1983 entitles an injured person to monetary damages if a *state* official violates his constitutional rights, "Congress did not create an analogous statute for federal officials." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In the 100 years after the creation of Section 1983 actions and leading up to the Supreme Court's creation of the *Bivens* right of action, Congress did not provide "a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Id.*

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court recognized an implied cause of action for damages against federal officers for violating the Fourth Amendment's prohibition against unreasonable searches and seizures by handcuffing a man in his home without a warrant. 403 U.S. 388, 396-97 (1971). "In the next nine years, the Court recognized two more implied causes of action under *Bivens*: a Fifth Amendment equal protection claim for employment discrimination by a congressman . . . and an Eighth Amendment claim for inadequate medical care by federal jailers." *Cantú v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (citing *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980)).

In the 45 years since *Carlson*, the Supreme Court has not approved of any other implied damages remedy under the Constitution. *See Ziglar*, 137 S. Ct. at 1855; *see also id.* at 1857 (collecting cases). Indeed, the Supreme Court acknowledged that its analysis in *Bivens*, *Davis*, and *Carlson* "might be different if they were decided today." *Id.* at 1856. Although those three cases remain "good law," the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1856–57 (quoting *Iqbal*, 556 U.S. at 675 (2009)).

4

**A.  This case involves a new context distinct from prior *Bivens* cases.**

To determine whether a cause of action under *Bivens* is available, courts first question whether the case involves a "new context" that is distinct from *Bivens*, *Davis*, and *Carlson*. *Id.* at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.*  "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

Here, Plaintiff claims violations of the Second, Fourth, and Fifth Amendments. ECF No. 1 at 5.  He alleges his Second Amendment right was violated when OIG personnel confiscated his personal firearm, a Fourth Amendment violation for the seizure, and a Fifth Amendment violation for not being afforded due process to contest the taking of his personal firearm. ECF No. 1, at 5:22-27; *Id.* at 5:6-12; *Id.* at 5:13-20.

The Supreme Court has never recognized a *Bivens* remedy for a Second Amendment violation, and therefore that claim necessarily involves a new context which precludes a right of action under *Bivens*.

Plaintiff's Fifth Amendment due process claim, in turn, is a new context. In analyzing whether a claim is a new context, a meaningful difference might be the rank of the officers involved, the constitutional right at issue, the statutory mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Ziglar*, 137 S. Ct. at 1860. For example, the Supreme Court rejected a Fifth Amendment Due Process claim for unlawful termination simply because the plaintiff was a military servicemember rather than a congressional employee like in *Davis*. *Chappell v. Wallace*,

462 U.S. 296, 305 (1983). In addition to the difference in positions between the instant case and *Davis*, the claims in each case are markedly different. In *Davis*, the Supreme Court recognized an implied equal protection cause of action under the Due Process clause of the Fifth Amendment by a congressional staff member who claimed that her rights had been violated when she was discharged based on sex. *Davis v. Passman*, 442 U.S. 228, 228 (1979).

Here, Plaintiff is not a congressional staff member and alleges no claims regarding employment discharge or any claims involving discrimination on the basis of sex. Further, Plaintiff's claim is based on procedural Due Process, a component of the Fifth Amendment that is distinct from the equal protection component used in *Davis*. "No one thinks *Davis* . . . means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Biven's* action." *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019); *see also Van Deelen v. Jones*, No. 4:23-CV-03729-AM, 2024 WL 3852349, at *14 (S.D. Tex. Aug. 16, 2024) ("The Supreme Court has never recognized a *Bivens* claim under the Fifth Amendment's procedural due process component.").

Similarly, Plaintiff's Fourth Amendment claims are meaningfully different from *Bivens* and constitute a new context. Again, in light of the Supreme Court's reliance in *Chappell* on distinction in job titles as a minor yet material difference, there is no question that Plaintiff's Fourth Amendment allegations are meaningfully different from *Bivens*. Plaintiff alleges that OIG "unlawfully seized Plaintiffs personal firearm without consent, legal process, or exigent circumstances." ECF No. 1 at 5:7-8. *Bivens* recognized an implied Fourth Amendment claim for an alleged unreasonable search and seizure by handcuffing a man in his home without a warrant. 403 U.S. 388, 396-97 (1971). Here, Plaintiff does not allege he was handcuffed or

otherwise restrained, and no actions occurred at the Plaintiff's home. Because his claim involves a new context, no *Bivens* claim should be implied, and his complaint should be dismissed.

**B. The availability of other processes to challenge OIG is a special factor which counsels against implying a *Bivens* action.**

In the second step of the *Bivens* analysis, if a case differs meaningfully from *Bivens*, *Davis*, or *Carlson*, then courts must consider whether any special factors counsel hesitation in expanding *Bivens* to the plaintiff's claims. *Ziglar*, 137 S. Ct. at 1857. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.* at 1858. In addition, "separation-of-powers principles are or should be center to the analysis." *Id.* at 1857. If any special factors do exist, then "courts must refrain from creating" an implied cause of action in that case. *Id.* at 1858; *see also Egbert v. Boule*, 596 U.S. 482, 492 (2022) ("If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.") (citation and quotations omitted).

"If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (citations and quotations omitted). For example, the U.S. Marshals Service's ("USMS") internal grievance procedure and OIG's complaint process are "sufficient to secure[ ] adequate deterrence, . . . [such] that they foreclose a *Bivens* action." *See Robinson v. Sauls*, 102 F.4th 1337, 1346-47 (11th Cir. 2024) ("Bolstering our conclusion that there is no

*Bivens* cause of action here is the existence of alternative processes and remedies in place to deter unconstitutional acts by task force members.") (quotations omitted); *see also Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024) (internal USMS grievance procedure and OIG investigation procedure are adequate alternative remedies that mandate against recognizing *Bivens* action).

Relevant to this case, Congress has provided a process to address allegations of misconduct by Department of Justice employees. Through the Inspector General Act of 1978, as amended, Congress instructed the Attorney General to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. § 413(d). Congress in turn authorized the Department's Inspector General to, as appropriate, "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice." *Id.* § 413(b)(2).

In legislating, Congress placed no limitations on who may report allegations of wrongdoing. *See generally id.* Accordingly, any person, including Plaintiff, may report such alleged misconduct. Indeed, OIG provides a link on its website to report allegations of wrongdoing. *See oig.justice.gov/hotline.* Upon receiving such allegations, OIG assesses them to determine whether to open an internal investigation of its own employee.

Further, to address situations where Inspectors General may be called upon to investigate high-level staff members within their office, Congress established the Integrity Committee under the Council of the Inspectors General on Integrity and Efficiency to perform such investigations. *See generally* 5 U.S.C. § 424(d)(4)-(8). The Integrity Committee's

Policies and Procedures define "staff members" for which it will consider allegations of wrongdoing as including those who report directly to the Inspector General, which in this case, applies to two of the Defendants—Assistant Inspector General Lake and General Counsel Malis. *See* Integrity Committee Policies and Procedures, Council of the Inspectors General on Integrity and Efficiency, at 1 (available at https://www.ignet.gov/sites/default/files/files/ICP%26PRevised_Jan-2018_Rev1_Finalx.pdf; https://www.ignet.gov/sites/default/files/files/Agency-FTE-Designations-FY24b.pdf.)

The existence of a congressionally-authorized investigatory process, as implemented by the Executive Branch, is a special factor counseling against this Court implying a *Bivens* claim. *See Egbert*, 596 U.S. at 498 (holding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy"). Because Plaintiff seeks to bring *Bivens* claims in a new context and special factors counsel against extending *Bivens*, his claims should be dismissed.

**III.    Defendants are entitled to qualified immunity.**

Even if Plaintiff had a cause of action, the Defendants would be entitled to qualified immunity, which shields "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Because qualified

9

immunity is an immunity from suit rather than a mere defense against liability, it is effectively lost if a case is erroneously permitted to go to trial or an immune defendant is subjected to "the costs of discovery and other pre-trial burdens." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (discussing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). therefore, the applicability of qualified immunity "should be determined at the earliest possible stage of the litigation[.]" *Ramirez*, 3 F.4th at 133 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Id.* at 132 (quotation and citation omitted). To determine whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. The first prong asks whether the facts as alleged show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). To overcome the first prong, Plaintiff must specifically allege facts demonstrating an individual defendant's constitutional wrongdoing. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions* has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Under the second prong, courts determine whether the violated constitutional right was clearly established with the specific context of the case. *Saucier*, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that this conduct was unlawful in the situation he confronted." *Id.* at 202.

10

Plaintiff has not met his burden to plausibly plead a violation of a constitutional right, let alone a "clearly established right" within the specific context of the case. He alleges that his personal firearm was temporarily confiscated at two government buildings—the OIG office in Dallas and at the federal courthouse. However, "the right secured by the Second Amendment is not unlimited," and the Supreme Court has refused to "cast doubt on . . . laws forbidding the carrying of firearms, for example in sensitive places such as schools and government buildings." *D.C. v. Heller*, 554 U.S. 570, 626 (2008). Because the Second Amendment right is subject to limitations in government buildings, Plaintiff's cannot plead a clearly established right. Therefore, his Second Amendment claims cannot survive the Defendants' qualified immunity. *See Yorzinski v. Imbert*, 39 F. Supp. 3d 218, 227 (D. Conn. 2014) (granting motion to dismiss where "Plaintiff had no clearly established right under either the Second Amendment or 18 U.S.C. § 930(d)(3) to carry a firearm into a federal facility under the circumstances alleged in this case. Imbert therefore has qualified immunity as to Plaintiff's Second Amendment claim").

Similarly, Plaintiff has failed to plead in the specific context of this case how his Fourth Amendment and Fifth Amendment rights have clearly been violated. Such context is necessary for Plaintiff to carry his burden to overcome the Defendants' qualified immunity. Even if accepted as true, the broad allegations of Plaintiff's complaint fail establish that any Defendant violated his clearly established rights of which a reasonable person would have known. With Plaintiff having no clearly established Constitutional right to be armed in a federal building, Defendants would also have qualified immunity regarding the ensuing seizure of the personal weapon (Fourth Amendment) without providing an opportunity to contest the seizure (Fifth

Amendment). Therefore, even if the Court recognizes a cause of action, the Defendants are

entitled to qualified immunity.

### IV.     Plaintiff cannot obtain equitable relief.

Even if the Court were to recognize a *Bivens* cause of action, Plaintiff's requests for

equitable relief would be barred, because "courts have found that injunctive and declaratory

relief are not available in a *Bivens* action." *Berk v. Wiggins*, No. 3:18-CV-2301-X-BN, 2020 WL

6528937, at *3 (N.D. Tex. Oct. 6, 2020), report and recommendation adopted, No. 3:18-CV-

2301-X, 2020 WL 6505017 (N.D. Tex. Nov. 5, 2020); *see also Butz v. Economou*, 438 U.S. 478,

504–05 (1978); *see also Dowell v. Kobayashi*, No. CV H-22-4486, 2023 WL 2227712, at *4 (S.D.

Tex. Feb. 24, 2023) ("even when relief under *Bivens* is generally available, a plaintiff is entitled

to only monetary, not injunctive, relief", so plaintiff would not be entitled to declaratory and

injunctive relief). Thus, even if the Court found an implied cause of action through *Bivens*,

Plaintiff could not prevail on his claims for equitable relief as matter of law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the

complaint.

Date: April 25, 2025                              Respectfully submitted,

                                                  NICHOLAS J. GANJEI
                                                  UNITED STATES ATTORNEY

                                                  By: */s/ Myra Siddiqui*
                                                  Myra Siddiqui
                                                  Assistant United States Attorney
                                                  Southern District No. 3257790
                                                  Texas Bar No. 24106434
                                                  1000 Louisiana, Suite 2300
                                                  Houston, Texas 77002

Tel: (713) 567-9600
Fax: (713) 718-3303
E-mail: myra.siddiqui@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 25, 2025, a true and correct copy of the foregoing was served

on the Plaintiff via certified mail.

/s/ Myra Siddiqui
Myra Siddiqui
Assistant United States Attorney